Opinion filed August 7, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed August 7,
2008

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                     Nos. 11-07-00204-CR, 11-07-00205-CR, &
11-07-00206-CR

                                                    __________

 

                                    ERNEST LEE TRAVIS, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 258th District Court

                                                            Polk
County, Texas

                                  Trial
Court Cause Nos. 14,314, 19,152, & 19,153

 



 

                                             M
E M O R A N D U M   O P I N I O N

In
Cause No. 11-07-00205-CR, the jury convicted Ernest Lee Travis, appellant, of
the third degree felony offense of possession of a controlled substance,
Alprazolam, by fraud.  In Cause No. 11-07-00206-CR, the jury convicted
appellant of the second degree felony offense of possession of a controlled
substance, Hydrocodone, by fraud.  In both causes, the trial court found two
enhancement paragraphs to be true and assessed punishment at twenty-five years
confinement.  In Cause No. 11-07-00204-CR, the trial court revoked appellant=s community supervision and
imposed a sentence of confinement for ten years.  The trial court ordered the
sentences in the three causes to run concurrently.  We affirm.








                                                                    Background

The
State charged appellant with fraud offenses under Section 481.129 of the Health
and Safety Code. Tex. Health &
Safety Code Ann. '
481.129 (Vernon 2003).  Section 481.129(a)(5)(A) provides that A[a] person commits an
offense if the person knowingly possesses, obtains, or attempts to possess or
obtain a controlled substance or an increased quantity of a controlled
substance by misrepresentation, fraud, forgery, deception, or subterfuge.@  An offense is a second
degree felony if the controlled substance is listed in Schedule I or II, and an
offense is a third degree felony if the controlled substance is listed in
Schedule III or IV.  See Section 481.129(d)(1), (2).  Hydrocodone
is listed in Schedule II, and Alprazolam is listed in Schedule IV.  See Tex. Health & Safety Code Ann. ' 481.032 (Vernon Supp.
2007).

                                                                         Issues

Appellant
raises identical issues in each of these three causes.  In his first issue,
appellant contends that the evidence was legally insufficient to support his
conviction for fraudulent possession of Alprazolam in Cause No.
11-07-00205-CR.  In his second issue, appellant contends that the evidence was
legally insufficient to support his conviction for fraudulent possession of
Hydrocodone in Cause No. 11-07-00206-CR.

                                                              Standard
of Review

To
determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). 
The jury, as the finder of fact, is the sole judge of the credibility of the
witnesses and the weight to be given their testimony.  Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art.
38.04 (Vernon 1979).

                                                                Evidence
at Trial








On
February 19, 2006, appellant was driving a vehicle on U.S. Highway 190 in Polk
County.  Onalaska Patrol Officer Ryan Vasquez observed appellant failing to
maintain a single lane of traffic, going off of the roadway, and then getting
back into the lanes of the roadway.  Officer Vasquez initiated a stop of
appellant=s vehicle. 
During the stop, Officer Vasquez obtained appellant=s consent to search the vehicle.  Appellant
told Officer Vasquez that he had some prescription medications in a lockbox in
the trunk of the vehicle.  Appellant opened the lockbox and gave the
medications to Officer Vasquez.  Appellant then closed the lockbox without
letting Officer Vasquez see whether the lockbox contained other contents. 
Officer Vasquez was suspicious about what might have been in the lockbox.

Appellant
gave Officer Vasquez three prescription pill bottles.  All three of the
prescriptions were in appellant=s
name.  One of the prescription bottles was for sixty Xanax pills.  The label
showed that Dr. Walid H. Hamoudi had prescribed the Xanax and that the Care
Plus Pharmacy had filled the prescription on February 17, 2006.  The
instructions on the label indicated that the Xanax pills were to be taken one
pill twice a day.  Officer Vasquez testified that there were six pills in the
bottle.  A second prescription bottle was for 120 Hydrocone pills.  The label
showed that Dr. Hamoudi had prescribed the Hydrocodone and that the Care Plus
Pharmacy had filled the prescription on February 17, 2006.  The
instructions on the label provided that the Hydrocodone pills were to be taken
one pill four times a day.  Officer Vasquez testified that there were seven pills
in the bottle.  The third prescription bottle was for sixty Xanax pills.  The
label showed that Dr. James H. Thomas had prescribed the Xanax and that the
Care First Pharmacy had filled the prescription on February 15, 2006.  The
instructions on the label advised to take two pills a day.  Officer Vasquez
testified that there were twenty-four pills in the bottle.  Officer Vasquez
also testified that one of the pill bottles that contained Xanax also contained
Soma pills.  The presence of the Soma pills caused Officer Vasquez concern
because appellant did not provide a prescription for Soma. 
Officer Vasquez arrested appellant for possession of dangerous drugs.








Officer
Vasquez contacted Detective Andy Lowrie of the Narcotics Division of the Polk
County Sheriff=s
Department for assistance.  Officer Vasquez gave the three pill bottles and the
lockbox to Detective Lowrie.  Detective Lowrie referred to the lockbox as a
safe.  He obtained a search warrant for the safe.  Detective Lowrie testified
that the safe contained several documents that, in his experience, pertained to
Aeither drug sales or
drugs that [were] owed to the subject.@ 
Detective Lowrie conducted an investigation to determine how appellant had
obtained the prescriptions.  As part of the investigation, he gathered
information from Dr. Thomas=s
office and from Dr. Hamoudi=s
office.  He also contacted individuals at the involved pharmacies.  Based on
the investigation, he determined that appellant was Aseeking doctors to obtain large quantities of
Hydrocodone and Xanax and Somas, which [were] the more popular abuse pills for
either sale or abuse in the Polk County area.@

Dr.
Thomas worked at the Gulf State Medical Clinic in Houston, Texas, as a pain
management physician.  Dr. Thomas treated appellant for cervical neck problems
and lumbar back problems.  Appellant saw Dr. Thomas on December 15, 2005,
January 18, 2006, and February 15, 2006.  On each of those days, Dr. Thomas
prescribed three medications to appellant: (1) Lorcet 10 (120 pills to take one
every six hours); (2) Soma 350 (120 pills to take one every six hours); and
(3) Xanax, 1 milligram (60 pills).  Dr. Thomas testified that Lorcet 10,
which was Hydrocodone, was a controlled substance.  He also testified that Xanax,
which was a benzodiazepine, was a controlled substance.  Dr. Thomas said that
his patients were advised that they were not to get these types of drugs from
any other physicians without prior notification to his office.  Dr. Thomas
testified that the reason for this policy was Ato
keep an absolute cap on the amount of medicine that the patient gets.@  On December 15, 2005,
appellant signed a document at Gulf State Medical Clinic providing that he
would Anot take any
pain medications from another physician under any circumstances for any reason
without informing that physician [that appellant was] in pain management and
notifying Gulf State Medical Clinic.@ 
On that date, it was Dr. Thomas=s
understanding that appellant had not been receiving and would not be receiving
prescriptions for pain medications from other physicians.  Dr. Thomas testified
that he would not have prescribed medications to appellant if he had known that
appellant had been obtaining prescriptions from other doctors.  Dr. Thomas also
testified that he did not know Dr. Hamoudi.








Dr.
Hamoudi testified that he was self-employed at the Cedar Medical Clinic in La
Marque, Texas.  He said that he had a general practice that sometimes involved
pain management.  Dr. Hamoudi treated appellant for neck pain and low back
pain.  Appellant saw Dr. Hamoudi on February 18, 2006.  On that date, Dr.
Hamoudi prescribed three medications to appellant: (1) Lorcet, which was
Hydrocodone, to be taken one tablet four times a day for a month; (2) Soma,
which was a muscle relaxant, to be taken one tablet four times a day; and (3)
Xanax, which had the generic name Alprazolam, to be taken twice a day.  Dr.
Hamoudi said that Hydrocodone and Alprazolam were controlled substances. 
Although Dr. Hamoudi prescribed the medications to appellant on February 18,
2006, the prescription bottles seized by the officers showed that the Care Plus
Pharmacy filled the prescriptions on February 17, 2006.  Dr. Hamoudi testified
that the pharmacy probably made a mistake on the date.

Dr.
Hamoudi also testified that his patients who took controlled substances were
advised verbally and in writing that they were to be under the care of one
physician, that they were not to share or to sell the medications, and that
they were to take the medications according to doctor=s instructions.  On February 18, 2006,
appellant signed a controlled-substance contract at Dr. Hamoudi=s office stating that A[he would] not take
narcotics prescribed by other doctors@
and that A[he would]
not obtain pain medications from any doctors outside of this clinic.@  On February 18,
2006, Dr. Hamoudi=s
understanding was that appellant was not getting Hydrocodone or Alprazolam from
any other physician.  When appellant saw Dr. Hamoudi on February 18, 2006,
appellant did not tell him that he had seen another doctor on February 15,
2006, or that he had gotten prescriptions for Alprazolam and Hydrocodone on
February 15, 2006.  Dr. Hamoudi testified that he did not know Dr. Thomas.  Dr.
Hamoudi also testified that he would not have prescribed medications to
appellant if he had known that appellant was obtaining medications from other
physicians.

Dr.
Hamoudi had previously worked at the Performance Clinic in Houston, Texas. 
While working there, Dr. Hamoudi had seen appellant on August 2, 2005, August
25, 2005, September 17, 2005, and November 5, 2005.  On each of those
occasions, Dr. Hamoudi had prescribed Hydrocodone and Alprazolam to appellant. 
Dr. Hamoudi testified that the prescriptions given at the Performance Clinic
provided sufficient medication to cover a two-week period.  Dr. Hamoudi said
that he stopped working at the Performance Clinic in November 2005.  However,
before testifying, Dr. Hamoudi had obtained appellant=s medical records from Performance Clinic. 
Those records showed that, on December 15, 2005, January 19, 2006, February 17,
2006, and March 3, 2006, appellant had gone to the clinic and had obtained
prescriptions for Hydrocodone and Alprazolam. 








Francisco
Rivera Torres testified that he worked at the Care First Pharmacy.  He said
that the Care First Pharmacy filled prescriptions written by Dr. Thomas.  He
confirmed that, on December 15, 2005, January 18, 2006, and February 15,
2006, the Care First Pharmacy filled Lorcet and Xanax prescriptions for
appellant.  He said that Lorcet (Hydrocodone) and Xanax (Alprazolam) were
controlled substances.  Torres testified that, because of the addictive nature
of controlled substances, the Care First Pharmacy had policies and procedures
relating to filling prescriptions for them.  On December 15, 2005, as part of
those policies and procedures, appellant signed a form acknowledging that he Aonly attend[ed] this
pharmacy for this medication.@ 
Torres identified the pills that were in the pill bottles the officers seized. 
He testified that one of the bottles contained Hydrocodone pills and that the
other two bottles contained Xanax pills.

                                                                        Analysis

Appellant
was indicted under Section 481.129(a)(5)(A) of the Health & Safety Code. 
The indictments alleged that appellant knowingly possessed or attempted to
possess controlled substances, Alprazolam and Hydrocodone, in Polk County Aby misrepresentation, fraud,
forgery, deception, subterfuge, or through the use of a fraudulent prescription
form.@  The State may
obtain a conviction under Section 481.129(a)(5)(A) by proving that the
defendant knowingly possessed or attempted to possess a controlled substance
(1) by an intentional concealment or nondisclosure of a material fact for the
purpose of inducing the controlled-substance provider to part with the
controlled substance or (2) by concealing a material fact in order to mislead a
physician into giving a prescription that the physician would not have given
had the information been disclosed.  Oler v. State, 998 S.W.2d 363, 370
(Tex. App.CDallas
1999, pet. ref=d).

On
February 19, 2006, Officer Vasquez stopped appellant in Polk County.  At the
time, appellant was in possession of two pill bottles containing Xanax pills
and one pill bottle containing Hydrocodone pills.  The evidence established
that Xanax was Alprazolam and that Alprazolam and Hydrocodone were controlled
substances.  Thus, appellant possessed controlled substances in Polk County as
alleged in the indictments.








The
officers seized the pill bottles.  The label on one of the bottles indicated
that the prescription was for Xanax, that Dr. Thomas had prescribed the Xanax,
and that the Care First Pharmacy had filled the prescription on February 15,
2006.  Dr. Thomas testified that he prescribed Alprazolam and Hydrocodone to
appellant on February 15, 2006.  The labels on the other two bottles indicated
that the prescriptions were for Xanax and Hydrocodone, that Dr. Hamoudi had
prescribed the Xanax and Hydrocodone, and that the Care Plus Pharmacy had
filled the prescriptions on February 17, 2006.  Dr. Hamoudi testified that he
prescribed Alprazolam and Hydrocodone to appellant on February 18, 2006.  He
also testified that the pharmacy probably made a mistake on the date the
prescriptions were filled.

The
evidence was legally sufficient to support a finding that appellant possessed
the seized Alprazolam and Hydrocodone by misrepresentation, fraud, deception,
or subterfuge.  Appellant represented to Dr. Thomas and to Dr. Hamoudi that he
would not take pain medications from other physicians, and appellant concealed
from them that he was obtaining Alprazolam and Hydrocodone from other sources. 
The fact that appellant was obtaining the medications from other sources was a
material fact because Dr. Thomas and Dr. Hamoudi would not have prescribed them
to appellant had they known appellant was getting them from another source. 
Based on the evidence, the jury could have reasonably concluded that appellant
misrepresented material facts to Dr. Thomas and to Dr. Hamoudi and that
appellant concealed material facts from them in an effort to mislead them into
giving him prescriptions for Alprazolam and Hydrocodone that they would not
have otherwise prescribed.  A rational trier of fact could have found that
appellant possessed Alprazolam and Hydrocodone by misrepresentation, fraud,
deception, or subterfuge.  Thus, the evidence was legally sufficient to sustain
appellant=s
conviction.  See Oler, 998 S.W.2d at 367-71 (Where the defendant
concealed from physicians that he was obtaining a controlled substance from
other physicians, the evidence was sufficient to establish that appellant
possessed the controlled substance by fraud or deception.).  We overrule
appellant=s issues.

                                      Revocation
of Appellant=s
Community Supervision








We
review a trial court=s
order revoking community supervision under an abuse of discretion standard.  Rickels
v. State, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); Cardona v. State,
665 S.W.2d 492, 493 (Tex. Crim. App. 1984).  In Cause No.11-07-00204-CR, the
State filed a motion and an amended motion to revoke appellant=s community supervision. 
The State alleged that appellant had violated the terms and conditions of his
community supervision by possessing controlled substances (the subject matter
of Cause No. 11-07-00205-CR and Cause No. 11-07-00206-CR).  The State also
alleged a number of violations that were not related to appellant=s possession of the
Alprazolam and Hydrocodone.  Appellant pleaded true to a number of the alleged
violations.  Proof of any one violation of the terms and conditions of
community supervision is sufficient to support a revocation.  McDonald v.
State, 608 S.W.2d 192, 200 (Tex. Crim. App. 1980); Taylor v. State,
604 S.W.2d 175, 180 (Tex. Crim. App. 1980); Leach v. State, 170 S.W.3d
669, 672 (Tex. App.CFort
Worth 2005, pet. ref=d). 
A plea of true alone is sufficient to support the trial court=s determination to revoke. 
Moses v. State, 590 S.W.2d 469, 470 (Tex. Crim. App. 1979); Cole v.
State, 578 S.W.2d 127, 128 (Tex. Crim. App. 1979); Hays v. State,
933 S.W.2d 659, 661 (Tex. App.CSan
Antonio 1996, no pet.).

The
evidence set forth above was sufficient to support a finding that appellant
violated the terms and conditions of his community supervision by possessing
Alprazolam and Hydrocodone by misrepresentation, fraud, deception, or
subterfuge.  In addition, appellant pleaded true to a number of the alleged
violations.  Based on these independent reasons, the trial court did not abuse
its discretion in revoking appellant=s
community supervision.

                                                               This
Court=s Ruling

The
judgments of the trial court are affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

August 7, 2008

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.